# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.                                                                No. CR 05-1484 MCA

**JASON ALONZO CARRELL**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Jason Alonzo Carrell's *Motion for Independent Testing* [Doc. 70] filed on May 8, 2006. The Court held hearings on Defendant's motion on June 6, 2006; June 9, 2006; and July 25, 2006. [Doc. 93, 99, 116.] Having reviewed the parties' written submissions, the evidence and argument presented at the hearings, the relevant law, and being otherwise fully advised in the premises, the Court finds that there is good cause for granting Defendant's motion as to the evidence identified as "Exhibit 1, (ATF Case No. 785010-05-0109, Item 5; APD Case No. 05-78776, Item 6), representing a controlled substance seized at the time of Defendant's arrest on July 13, 2005," subject to strict compliance with the conditions specified below.

Fed. R. Crim. P. 16(a)(1)(E) provides that:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any

>of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

This rule has been applied to permit a defendant charged with illegally possessing a controlled substance to obtain a sample of that substance for purposes of independent testing, subject to a variety of procedural safeguards aimed at preserving the integrity of the Government's evidence. See, e.g., United States v. Noel, 708 F. Supp. 177, 178 (W.D. Tenn. 1989); see generally William G. Phelps, Annotation, Illegal Drugs or Narcotics Involved in Alleged Offense as Subject to Discovery by Defendant Under Rule 16 of the Federal Rules of Civil Procedure, 109 A.L.R. Fed. 363 (1992).

The issue in this case is not whether Defendant is entitled to inspect the substances he is charged with illegally possessing but what procedural safeguards are necessary to protect the Government's interests and the interests of justice due to the unusual nature and extent of the testing he requests. Ordinarily, all that is required to allow a defendant to obtain an independent test of the content of an alleged controlled substance is a very small portion of the total amount collected as evidence by the Government. In such cases, the effect of such independent testing on the integrity of the Government's evidence as a whole is negligible and can be handled by means of a stipulation as to the amount, weight, or percentage of the substance removed or destroyed for testing purposes.

In this case, however, Defendant requests that the Government turn over the drug evidence in its entirety and allow it to be physically manipulated such that it will no longer

retain the same appearance if and when it is returned to the Government and presented to the jury at trial. Defendant also requests that the Government deliver the drug evidence to an independent, DEA-licensed laboratory located out of state, rather than using a government laboratory or a laboratory located within the District of New Mexico.

For the reasons set forth below, Defendant has presented evidence establishing good cause to take such extraordinary measures as to one of the drug exhibits at issue in this case, namely the exhibit identified as "Exhibit 1, (ATF Case No. 785010-05-0109, Item 5; APD Case No. 05-78776, Item 6), representing a controlled substance seized at the time of Defendant's arrest on July 13, 2005" (hereinafter "Exhibit 1"). The Government, however, has shown the need to employ extra procedural safeguards with respect to such testing in order to preserve the integrity of the evidence and avoid unfair prejudice at trial.

The Court heard testimony at a hearing on June 6, 2006, to the effect that police officers found two bundles of controlled substances packaged for distribution in separate locations along the path of the foot pursuit that immediately preceded Defendant's arrest. According to the testimony of the officer who observed these bundles at the scene of the arrest, each bundle contained a single outer "baggy" with additional "baggies" or packaging materials inside them.

According to the arresting officer's testimony, the bundle later identified as Exhibit #1 appeared to contain approximately one ounce of powder cocaine as well as approximately one ounce of crack cocaine, both packaged within a single outer "baggy." Subsequent testing by the Government, however, suggests that the entire contents of this bundle is, in

fact, crack cocaine. This drug evidence was produced for inspection at the suppression hearing on June 6, 2006, but there remained questions about whether the contents of the outer "baggy" were mixed or otherwise manipulated so as to produce a test result showing crack cocaine instead of the distinct quantities of crack cocaine and powder cocaine that the arresting officer claims to have observed within the outer "baggy" at the scene of the foot pursuit. [Tr. 6-6-06.]

Based on this apparent discrepancy between the Government's test result and the arresting officer's testimony, as well as the parties' inability to resolve their dispute by means of simply inspecting the drug evidence and chain-of-custody documents produced at the time of the suppression hearing, counsel for Defendant requested the opportunity to send the entire bundle of drug evidence identified herein as "Exhibit 1" to an independent, DEA-licensed laboratory to determine what it contains. Specifically, the purpose of such testing is to determine whether and in what proportions this bundle contains crack cocaine, powder cocaine, or a mixture of the two. If powder cocaine is found, the testing also may show its purity, *i.e.*, whether it has been mixed with a cutting agent or other substance.[1] [Tr. 6-9-06.]

---

[1] In a supplemental filing on July 31, 2006, Defendant claimed for the first time that the motion for independent testing encompassed both the bundle identified herein as "Exhibit 1" as well as the other bundle recovered from the scene of the foot pursuit. [Doc. 118.] This untimely claim is contrary to defense counsel's representations at the numerous hearings on this matter and finds no support in the record. At the hearing on June 6, 2006, the arresting officer testified that the other bundle contained approximately two quarter-gram bags of crack cocaine within a single outer "baggy," and the drug evidence was produced for Defendant's inspection and cross-examination. Such inspection and cross-examination revealed no legitimate need for any type of specialized testing of the second bundle to distinguish between crack cocaine and powder cocaine. [Tr. 6-6-06.]

At a subsequent hearing on July 25, 2006, Defendant presented expert testimony from Dr. ElSohly of ElSohly Laboratories, Inc. (ELI), explaining the procedure for making such determinations and why it is prudent to use an independent laboratory with specialized knowledge for this task.  Under this specialized procedure, the entire content of the bundle identified as "Exhibit 1" needs to be *homogenized*, or ground together in a device similar to a coffee grinder, to ensure that a representative sample can be drawn from it for purposes of testing its content and identifying its constituents.  The homogenization process can be performed quickly, within the span of a single work day, but it will permanently change the appearance of the substance, such that individual "rocks" of crack cocaine, if present, will no longer be discernible.  [Tr. 7-25-06.]

After the homogenization process is completed, there is no need to retain the entire content of "Exhibit 1" for further independent testing by Defendant.  Instead, Dr. ElSohly's laboratory only needs a much smaller representative sample to determine whether the substance is powder cocaine, crack cocaine, or a mixture of the two.  Testing of the representative sample may take a longer period of time, up to two weeks.  In addition, the representative sample itself is not destroyed during the testing, so it may be possible to return the sample as well after the testing is completed.  [Tr. 7-25-06.]

Both before and after receiving the above testimony, the Court notes that the parties were given ample opportunity to confer and jointly develop a form of order that addresses the matters now set forth in the present *Memorandum Opinion and Order*.  Unfortunately, their respective efforts fell short of this obligation, leaving this Court with the sense that such

efforts to follow its directives were not made in good faith.  The parties are forewarned that their failure to follow this Court's directives, including their obligation to display professionalism in their dealings with one another, could result in the imposition of sanctions.

In light of the parties' failure to agree upon a form of proposed order, I find that it is reasonable and necessary to impose the following procedural safeguards on Defendant's independent testing of the drug evidence (Exhibit #1), and these safeguards are hereby imposed as conditions for granting Defendant's motion:

1.	The testing outlined above will be limited to "Exhibit 1," as Defendant already has had the opportunity to inspect the other drug evidence at the suppression hearing and has not timely raised similar issues pertaining to that other evidence which are material to his defense.

2.	The Government will be responsible for delivering "Exhibit 1" to Dr. ElSohly at the ELI facility at 5 Industrial Drive, Oxford, Mississippi  38655, by no later than August 9, 2006, and maintaining the chain of custody up until the time of its actual delivery to Dr. ElSohly.

3.	After that delivery, it is the responsibility of Defendant and the laboratory he has chosen (Dr. ElSohly and ELI) to maintain and document the chain of custody of "Exhibit 1" until each of its constituents is returned to the Government in their entirety, and to provide copies of a complete written chain-of-custody document to defense counsel (Judith Rosenstein, P.O. Box 25622, Albuquerque, NM 87125), counsel for the Government (David

M. Walsh, Assistant United States Attorney, P.O. Box 607, Albuquerque, NM 87103), and the Court (Honorable M. Christina Armijo, United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102).

4. Dr. ElSohly, and ELI shall strictly adhere to all rules, regulations, and protocols currently in place with regard to the handling of controlled substances, and this Court may impose sanctions for any failure to fulfill this responsibility.

5. In a manner consistent with DEA laboratory protocol, "Exhibit 1" must be weighed upon its delivery to Dr. ElSohly, and an agent of the Government must be permitted to witness such weighing. All results of Dr. ElSohly's weighing shall be reported to the Government, as well as defense counsel, for purposes of ensuring that the chain of custody for the entire contents of this exhibit is not lost or disturbed as a result of the independent testing.

6. In a manner consistent with DEA laboratory protocol, Dr. ElSohly and ELI must complete the process of homogenizing and drawing a representative sample from "Exhibit 1" by no later than August 11, 2006, and an agent of the Government must be permitted to witness this process.

7. After "Exhibit 1" has been homogenized and the representative sample has been drawn, the remainder of this exhibit (*i.e.*, the entire content except for the representative sample), must be weighed and returned immediately to the Government, with the results of the weighing reported to the Government and to defense counsel in accordance with DEA laboratory protocol.

8.      The representative sample also must be weighed, with the results of the weighing reported to the Government and to defense counsel in accordance with DEA laboratory protocol.

9.      If requested by the Government, Dr. ElSohly and ELI must return the representative sample to the Government upon completion of the independent testing, or otherwise account for its lawful disposition.

10.     Defendant has until no later than September 1, 2006, to complete and obtain the results of the testing of the content of the representative sample from Dr. ElSohly and ELI. For purposes of determining compliance with this *Memorandum Opinion and Order* as well as defense counsel's CJA obligations only, counsel for Defendant shall report all test results and provide a complete written chain-of-custody document to the Court *ex parte* and under seal by that date.

11.     Except as noted above with respect to weights and chain-of-custody documentation, the Government is not entitled to receive the test results as to the content of the representative sample unless Defendant intends to use those results or Dr. ElSohly's testimony at trial or sentencing.  See Fed. R. Crim. P. 16(b)(1)(B).

12.     The Court will not require the Government to call Dr. ElSohly or his staff in its case-in-chief at trial in order to establish the chain of custody of Exhibit 1 or to explain the changes in appearance or physical preservation of this exhibit occasioned by the independent testing.  If the parties are unable to reach a stipulation that will obviate the need for such

testimony, the Court will instruct the jury as to these issues in lieu of requiring witness testimony in the Government's case-in-chief.

13.  If the conditions outlined in this *Memorandum Opinion and Order* are not satisfied in all respects, the Court reserves the right to impose sanctions, including but not limited to restricting objections to the authenticity or admissibility of "Exhibit 1" at trial, instructing the jury as to the reasons for the absence of, or changes to, this exhibit, and requiring disclosure of test results to the Government.

14.  Whether inadvertent or intentional, any loss of "Exhibit 1" or its constituents occasioned by this independent testing shall not provide grounds for the dismissal of any charges contained in the *Superseding Indictment*.

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Independent Testing* [Doc. 70] is **GRANTED** subject to each and every one of the conditions set forth above.

**SO ORDERED** in Albuquerque, New Mexico, this 2nd day of August, 2006.

_____
**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**